UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


                        -against-                                    17-cr-0738 (LAK)


ROBERT MERLO,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


          Appearances:


                                   Sarah Mortazavi
                                   Cecilia Vogel
                                   Assistant United States Attorneys
                                   GEOFFREY BERMAN
                                   UNITED STATES ATTORNEY


                                   Arthur L. Aidala
                                   LAW OFFICES OF AIDALA & BERTUNA, P.C.
                                   *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

          Following a four-day jury trial, defendant was convicted, on March 4, 2019, of

conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, wire fraud in violation of 18

U.S.C. § 1343, and aggravated identify theft in violation of 18 U.S.C. § 1343 and 2.  The conspiracy

involved an elaborate attempt to steal the identify of a deceased woman in order to convert stock

certificates registered in the name of the deceased and found in her apartment, which were worth

approximately $2 million.  On June 27, 2019, this Court sentenced defendant to forty-two months'

imprisonment, well below the Sentencing Guidelines range of seventy to eighty-one months.

2

Defendant surrendered to the Bureau of Prisons ("BOP") on September 4, 2019 for the service of his sentence.

Defendant now has filed a motion seeking compassionate release based on his alleged medical conditions, including asthma, hypertension, metabolic disease, and sleep apnea, as well as a family history of heart disease, all of which he argues expose him to a higher risk of an adverse outcome should he contract COVID-19.

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment upon a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[1]

On April 3, 2020, defendant filed with the BOP a request "to be placed on home confinement or furlough as a result of COVID 19 and the potential effects to [his] well being."[2] But requests for home confinement[3] and for furlough[4] are not requests for compassionate release. Defendant's request to the BOP did not mention compassionate release, and it was construed by the BOP as seeking only home confinement or furlough.[6] Consequently, defendant has not exhausted

---

[1]

18 U.S.C. § 3582(c)(1)(A).

[2]

DI 154 Ex. 3 at 1.

[3]

18 U.S.C. § 3624(c).

[4]

*Id.* § 3622.

[6]

DI 156 at 7 n.4.

3

his administrative remedies as required by Section 3582(c).  Yet, even if he had, and the application for compassionate release were properly before the court, a reduction of defendant's sentence would not be warranted.

A court may grant compassionate release, assuming administrative remedies have been pursued as required, where (1) there are "extraordinary and compelling reasons" warranting a sentence reduction, (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a).[7]  The relevant policy statement, set forth in the Sentencing Guidelines at Section 1B1.13 and its application notes, provides that extraordinary and compelling reasons exist when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[8]   The government rightly points out that the defendant does not even claim that Section 1B1.13 is satisfied here.

To be sure, there is an issue whether Section 1B1.13 controls here following the enactment of the First Step Act.  As this Court has stated previously, "the question whether it is bound by the Sentencing Commission's ('USSC') compassionate release policy statement is a much debated question and thus so too are the grounds on which the court may grant relief in a case like this."[9]  But the Court need not resolve this debate, as defendant's application would fail regardless

---

[7]
       18 U.S.C. § 3582(c)(1)(A)(I).

[8]
       U.S.S.G. § 1B1.13, cmt.1(A)(ii).

[9]
       *United States v. Canales*, No. 16-cr-212 (LAK), 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (citations omitted).

4

of whether the policy statement is controlling.

Defendant alleges that he suffers from several medical conditions, including asthma, which the Centers for Disease Control and Prevention ("CDC") has indicated could expose individuals to a higher risk of serious illness if they contract COVID-19.[10]  But affliction with various medical conditions alone is insufficient to justify compassionate release.  Instead, the threshold question, even assuming that Section 1B1.13 does not tie the Court's hands, would be whether defendant has demonstrated "extraordinary and compelling" reasons for his early release. He has not.

In support of his claim, defendant relies on a one page letter from a health care provider that lists several conditions from which defendant alleges he suffers, the fact that the BOP medical staff in September 2019 prescribed an inhaler often used by asthmatics, and his request to the BOP for home confinement or furlough, in which he stated that he has asthma.[11]  The government casts doubt on the existence of some of defendant's alleged medical issues, including his sleep apnea, hypertension, and metabolic syndrome, no mention of which was made in defendant's Presentence Investigation Report or his BOP medical records.[12]  The government contends that these records demonstrate also that defendant's asthma is seasonal only.[13]  While the

---

[10]

CDC, *People who are at higher risk* (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[11]

DI 154 Exs. 1-3.

[12]

DI 156 at 10-11.

[13]

*Id.*

Court is not in a position to make a precise medical characterization, defendant certainly has not persuaded it that he suffers from "moderate to severe" asthma, the seriousness of asthma that the CDC has said  "may put people at higher risk for severe illness from COVID-19."[14]

Moreover, even assuming that defendant's motion correctly catalogued his ailments, he would not have met his burden of proving that they warrant his early release in light of the COVID-19 pandemic. Critically, defendant has adduced no evidence that these conditions cannot be managed in prison or that his health is unstable.[15]  The Court is sympathetic to defendant's concerns about his health while in prison, but he has failed to demonstrate that these concerns provide extraordinary and compelling reasons for compassionate release.

Nor has defendant demonstrated that he is receiving inadequate care at Otisville, where currently is incarcerated.  The Court does not minimize the risks that COVID-19 poses for inmates, but it is mindful that the BOP has made efforts to address and minimize these risks. Indeed, as of the government's May 27, 2020 letter, Otisville no longer has any active cases of COVID-19.[16] While the virus could resurface at Otisville, this possibility does not justify granting defendant's application.

Finally, even if defendant had demonstrated that his medical conditions presented "extraordinary and compelling reasons" for a reduction in sentence, his application still would fail.

---

[14]

CDC, *People with Moderate to Severe Asthma* (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

[15]

*See, e.g.*, *United States v. Brady*, No. 18c-r-316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (denying defendant's motion for compassionate release, in part because, "[w]hile [the Defendant's] medical conditions are serious, release is not justified because those conditions are stable and the Defendant has managed them in prison[.]").

[16]

DI 156 at 15.

6

Before a court may grant an application for compassionate release, it must consider the Section 3553(a) factors to determine "whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."[17]   Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) "the need for the sentence imposed" to, among other objectives, "provide just punishment for the offense," and (3) the Sentencing Guidelines range.[18]   Defendant received a large downward variance from the Guidelines range at sentencing.  The seriousness of defendant's crime does not warrant any further reduction, and certainly merits a punishment of more than nine months' imprisonment. Granting defendant's application for early release in these circumstances, when his health is stable and he has served only a small fraction of his forty-two month sentence, would be inconsistent with the Section 3553(a) factors.

Accordingly, defendant's motion for compassionate release (DI 154) is denied.

SO ORDERED.

Dated:        June 4, 2020

Lewis A. Kaplan
United States District Judge

_____

[17]
    *United States v. Ebbers*, No. 02-cr-1144 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan 8, 2020).

[18]
    18 U.S.C § 3553(a).